**24**

UNITED STATES of America,

v.

Arthur L. PIMENTAL and Loretta
R. Pimental, Defendants.

No. CRIM. 99–10310–NG.

United States District Court,
D. Massachusetts.

April 11, 2001.

———

Harvey R. Peters, Peters & Moscardelli,
Boston, MA, for Arthur L. Pimental.

James C. Rehnquist, Goodwin Procter
LLP, Boston, MA, for Loretta R. Pimental.

Mark J. Balthazard, United States Attorney's Office, Boston, MA, for U.S.

**PROCEDURAL ORDER RE:
GOVERNMENT'S MOTION
FOR RECONSIDERATION**

GERTNER, District Judge.

For the reasons discussed below, the Court **STAYS** its February 20, 2001, Order compelling the government to produce Rule 6(e) discovery to the defendants, Arthur L. Pimental and Loretta R. Pimental ("the Pimentals"). After considering the oral arguments of counsel, the Court wishes to narrow the issues which need to be briefed. The parties are **ORDERED** to submit supplemental briefs on the following two issues: (1) Whether the Court must find the government "knowingly" violated Rule 6(e), or in the alternative, disclosed grand jury materials in "bad faith," before I may explore the question of the appropriate remedy through further discovery; and (2) whether the government's violation in the Pimental investigation was "knowing" or in "bad faith."

## I.  BACKGROUND

On April 3, 2001, I held a hearing on the government's motion to reconsider my February 20, 2001, decision ordering the government to produce discovery regarding the government's violation of Fed.R.Crim.P. 6(e) ("Rule 6(e)") when it disclosed secret grand jury materials to private investigators from the Massachusetts Insurance Fraud Bureau ("the IFB"). In its motion to reconsider filed prior to the hearing, the government made two arguments: First, that I should have reviewed Judge Saris' earlier order allowing disclosure of grand jury materials for an abuse of discretion;[1] second, I should modify my February 20 decision because the government's violation was not "knowing" or in "bad faith" (in light of Judge Saris' order

1. As I indicated from the bench, I reject the government's abuse of discretion analysis. The defendant's motion is not an appeal from Judge Saris' order entered in an *ex parte* proceeding. It is more akin to a motion for reconsideration of an earlier order by this Court which has been served on opposing counsel—and subject to *de novo* consideration by this Court.

of disclosure), and therefore, dismissal of the indictment is unwarranted in any event.

During oral argument, the defense suggested that the government knew of the Rule 6(e) problems and the relevant case law, notably *United States v. Tager*, 638 F.2d 167 (10th Cir.1980), as early as 1994, but nevertheless continued to file *ex parte* motions for disclosure of grand jury materials to IFB personnel that were less than complete. The government responded that its *ex parte* filings were entirely appropriate since, after briefing, Judge Stearns came to the opposite conclusion on the question of the IFB's status under Rule 6(e) in a 1994 case, *United States v. Rosenthal et al.*, No. 94–CR–10244–RGS. According to the government, Judge Stearns denied the defendants' motion to dismiss the indictment on Rule 6(e) grounds and expressly found IFB employees qualified as "government personnel" for purposes of Rule 6(e).

In light of these arguments, four questions are raised: (1) Whether the government violated Rule 6(e) when it disclosed secret grand jury materials to IFB investigators; (2) whether the Court must find the government violated Rule 6(e) "knowingly," or in the alternative, in "bad faith," before I may explore the question of the appropriate remedy through further discovery; (3) whether the government's violation was in fact "knowing" or in "bad faith"; and, (4) whether such a violation was harmless error.

I will accept further briefing on the second and third questions but not on the first or fourth for the reasons described below.

## II. DISCUSSION

### A. The Meaning of "Government Personnel"

As to the first question, I stand by my ruling on the definition of "government personnel" under Rule 6(e)(3)(A)(ii), as well as my finding that the government violated Rule 6(e) in this case despite the fact that it obtained an order authorizing disclosure to IFB personnel.[2] The government's recent concerns still do not address the fundamental question under Rule 6(e): What does the plain language of Rule 6(e)(3)(A)(ii) mean? The government's insistence that the better policy approach would be to have "government personnel" mean "privately employed personnel" or "private experts under contract with the government" should be addressed to Congress, not this Court. The

---

**2.** I note that the government's arguments at the reconsideration hearing generally either (a) ignored those portions of my February 20 decision which explicitly resolved certain questions of law and fact in the defendants' favor, or (b) raised issues for the first time in this case. As an example of (a), the government suggests that my February 20 decision missed the central question posed by the relevant case law on Rule 6(e)—whether nongovernmental recipients of secret grand jury materials acted under the "control and direction" of the federal government during a grand jury investigation. In fact, I identified this question, addressed the government's cases at length, and expressly ruled that the government had not met its burden of showing the requisite elements of "control and direction" with respect to the IFB to meet anything like a "government personnel" status. *See* Memorandum and Order, dated Feb. 20, 2001, at 17–24; *see also United States v. Sells Eng'g, Inc.*, 463 U.S. 418, 103 S.Ct. 3133, 77 L.Ed.2d 743 (1983) [hereinafter *"Sells"*]; *United States v. Benjamin*, 852 F.2d 413 (9th Cir.1988), *vacated on other grounds Benjamin v. United States*, 490 U.S. 1043, 109 S.Ct. 1948, 104 L.Ed.2d 418 (1989); *United States v. Anderson*, 778 F.2d 602 (10th Cir.1985) [hereinafter *"Anderson"*]; *United States v. Lartey*, 716 F.2d 955 (2d Cir.1983)

[hereinafter *"Lartey"*]; *United States v. McRae*, 580 F.Supp. 1560 (D.D.C.1984) [hereinafter *"McRae"*].

As an example of (b), the government at the hearing, which is to say, belatedly, asserted that the evidence showed the IFB investigators actually operated under the "control and direction" of the federal government during the Pimental investigation. The government maintains, without record support, that it provided IFB investigators with a memorandum at the time of grand jury disclosures that detailed the IFB's responsibilities under Rule 6(e). The government should have raised the claim, and presented some evidence to support it, at any one of the following opportunities: (1) Government's Motion for Reconsideration at 2–9 [docket # 55]; (2) Government's Opposition to Defendants' Motion for Reconsideration at 6–9 [docket # 52]; (3) Government's Opposition to Defendants' Motion to Dismiss at 3–9 [docket # 42]; (4) Government's Opposition to Defendants' Motion for Discovery at 2 [docket # 37]; or (5) the September 7, 2000 hearing on defendants' motion to dismiss the indictment.

In any event, this de facto "control" issue is more appropriate for consideration as "harmless error." *See* Part II.D *infra*.

latest arguments essentially ask me to read the phrase "government personnel" out of Rule 6(e)(3)(A)(ii), or mangle its plain meaning.

I disagree with the government's renewed efforts to parse the facts and holdings of *Sells, Tager, Anderson, Lartey,* and *Benjamin,* all of which were discussed at length in my February 20 decision.[3] The factual distinctions between *Anderson* and *Lartey* on the one hand, and *Tager* and this case on the other, make all the difference for purposes of my ruling that the government violated Rule 6(e) in the instant case.

First, the fact that IFB investigators in this case were not paid for their services by the federal government, as were the experts in *Anderson* and *Lartey,* means the IFB personnel were "not in any sense in the employ of the government" as were the experts in *Anderson* and *Lartey. Anderson,* 778 F.2d at 605 n. 1; *Lartey,* 716 F.2d at 964. Indeed, it can be argued that the salaries of IFB investigators come from the victims of the economic crimes at issue, namely, the insurance companies.

Second, the retained experts in *Anderson* and *Lartey* received pre-existing materials that were presented to the grand jury, not materials that were "cloaked with secrecy." *Anderson,* 778 F.2d at 605 (comparing the facts of that case to the facts of *Lartey* ); *see also Church of Scientology Int'l v. United States Dep't of Justice,* 30 F.3d 224, 235 (1st Cir.1994). The government made no claim here that the Pimental disclosures did not involve secret grand jury materials.

### B. *Whether the Violation Must Be "Knowing" or in "Bad Faith" Before a Remedy May Be Imposed*

Assuming that a Rule 6(e) violation occurred, the government maintains that the Court must find the government's violation was "knowing" or in "bad faith" before it may order discovery or impose any remedy. Defendants urge that the "knowing" inquiry is only necessary before a violation of Rule 6(e) may be punished as a contempt of court. *Cf.* Fed.R.Crim.P. 6(e)(2). If so, the Court may proceed directly to the question of harmless error and order the Rule 6(e) discovery per my February 20 decision.

The defendants are hereby **ORDERED** to submit supplemental briefs on whether the government's violation must be "knowing" or in "bad faith" by **April 20, 2001.** The government's response is due no later than **May 4, 2001.**

### C. *Whether the Government's Violation Was "Knowing"*

Finally, assuming a "knowing" or "bad faith" finding is a prerequisite to remedying a Rule 6(e) violation, it remains to be determined whether the government violated Rule 6(e) "knowingly" or in "bad faith" in this case. The government believes the earlier orders issued by Judge Stearns in the *Rosenthal* case, and by Judge Saris on the *ex parte* motion in this case, conclusively demonstrate that the government did not act in bad faith. The defendants have argued that the government acted knowingly in violating Rule 6(e), as evidenced by, *inter alia,* the failure to cite *Tager* in its *ex parte* motion, and possibly, the U.S. Attorney's internal policies and memoranda.[4]

The defendants are **ORDERED** to submit supplemental briefs on whether the government knowingly violated Rule 6(e) in the Pimental investigation by **April 20, 2001.** The government's response is due no later than **May 4, 2001.** The parties should refer-

**3.** The government has never mentioned *United States v. Rosenfield,* 780 F.2d 10 (3d Cir.1985), where federal prosecutors took the more sensible position of conceding that private insurance investigators do not qualify as "government personnel" in circumstances similar to the instant case.

**4.** If the Pimentals believe internal policies or documents are necessary to the resolution of the "knowing" issue, they should submit a written motion for discovery of the government's files contemporaneously with their supplemental briefings. Of course, any such motion raises important concerns about the confidentiality of investigative documents. Defendants must show cause to believe such discovery will produce evidence of a knowing violation and present the reasons why such internal documents would not be privileged.

ence evidence supporting their respective positions.

### D. *Harmless Error and Remedy*

Only after the above questions are answered and all appropriate discovery is provided by the government may the Court address the issue of whether the government's Rule 6(e) violation prejudiced the Pimentals, and finally, the appropriate remedy. The cases the government cites (i.e., *Sells, Anderson, Lartey,* etc.) describe certain factors, like the nature of the grand jury disclosures, the persons to whom disclosures were made, and whether those persons were in the "employ" of the government in any sense, which may delineate the harmless error analysis to be applied. The government's alleged control over IFB employees, which was not disclosed prior to the reconsideration hearing, would also be relevant to the harmless error determination.

### III. *CONCLUSION*

For the reasons stated above, the Court **STAYS** its February 20 Order compelling the government to produce Rule 6(e) discovery. The parties are **ORDERED** to submit supplemental briefs on the following two issues: (1) Whether the Court must find the government violated Rule 6(e) "knowingly," or in the alternative, in "bad faith," before I may explore the question of the appropriate remedy through further discovery; and (2) whether the government's violation in the Pimental investigation was in fact "knowing" or in "bad faith." Defendants' briefs are due no later than **April 20, 2001**. The government's response is due no later than **May 4, 2001**.

**SO ORDERED.**